UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RADHA SAMUEL
8720 Georgia Ave, Suite 600
Silver Spring, MD 20910[1]

               Plaintiff

v.                                                              CIVIL ACTION NO.:

PLANNED COMPANIES, INC.
150 Smith Rd.
Parsippany, NJ 07054
               Defendant

## COMPLAINT

Comes now the Plaintiff, Radha Samuel, by and through undersigned counsel, and hereby files the instant Complaint against Defendant, Planned Companies, Inc. d/b/a Planned Companies under District of Columbia law.

## INTRODUCTION

This case presents a disgusting tale of a male operations manager taking advantage of young female employees and other female service workers at Planned Companies, Inc. Under the guise of a "company policy," Planned Companies' manager took pictures of Plaintiff and Plaintiff's female coworkers over a long period of time to use for his own personal perverse pleasure. The manager would wait for female employees outside of their places of work until two or three in the morning. Sometimes the manager would take pictures. Sometimes, the manager would try to get the employees to go in his car. Sometimes, the manager would ask

---

[1] As described below, Plaintiff is concerned for her safety and well-being. Should Plaintiff's harasser have public access to Plaintiff's home address, Plaintiff avers that she will be in physical danger. Thus, Plaintiff's counsel has supplies Plaintiff's counsel's address in the caption under LCvR 5.1. However, Plaintiff states that she is a full-time resident of Silver Spring, MD in the 20906 area code (see ¶ 2 *infra*).

1

employees on dates, send them lewd photographs, discuss his penis, request sexual favors for raises and other lewd and lascivious workplace activity.

When Plaintiff and other employees complained to Planned Companies, the manager retaliated by terminating, suspending, cutting hours, or sending the employees to dangerous shift locations usually reserved for experienced male security guards and other professionals.  Those female employees that denied his sexual advances were denied raises, promotions and working hours.

This story would have been different had Planned Companies taken actions to stop the manager.  It did not.  Multiple complaints, phone calls and claims of sexual harassment yielded nothing more than non-existent "investigations" and a failure to discipline the manager or remove vulnerable employees from a sexually hostile work environment.  Instead, Planned Companies Human Resources department had a protective relationship with the manager, enabling him to suspend, discipline, cut working hours and wages and constructively discharge the Plaintiff.  Having found the courage to try to stop this behavior, Plaintiff brings these claims for discrimination, sexual harassment, intentional infliction of emotional distress and retaliation under D.C. law.

## THE PARTIES

1. Radha Samuel (hereinafter referred to as "Plaintiff") is a resident of the state of Maryland.

2. Plaintiff's resides in Silver Spring, MD 20906.

3. Plaintiff is female.

4. Defendant, Planned Companies, Inc. ("Planned Companies" or "Defendant") is a wholly owned subsidiary of FirstService Corporation.

5. FirstService "generates $1.5 billion in annual revenues" and has more than 17,000 employees across North America.

6. FirstService has a market capitalization of approximately $9 billion.

7. Upon information and belief, Defendant operates in hundreds of business locations throughout the United States.

8. Planned Companies provides "janitorial, maintenance, concierge/front desk and security services" to corporate buildings and other real estate properties.

9. Planned Companies is headquartered in Parsippany, NJ at 150 Smith Rd., Parsippany, NJ 07054.  Planned Companies is a resident of New Jersey.

10. Planned Companies provides service employees to for janitorial and other services and pays, on average, $17.00/hour.

11. Planned Companies employees over 1,000 employees.

12. At all times relevant to this complaint, Planned Companies was employing personnel in the District of Columbia.

13. At all times relevant to this complaint, Planned Companies was conducting business in the District of Columbia.

14. At all times relevant to this complaint, Planned Companies was making employment decisions related to Plaintiff's employment in the District of Columbia.  The United States District Court for the District of Columbia has personal jurisdiction over the parties and diversity jurisdiction over this action.

**JURISDICTION AND VENUE**

15. As alleged in this complaint, The United States District Court for the District of Columbia has personal jurisdiction over the parties and diversity jurisdiction over this matter.  Venue is proper in the United States District Court for the District of Columbia.

16. At all times relevant to this complaint, Plaintiff was employed by Defendant in the District of Columbia.

17. At the time of filing this Complaint, Plaintiff is a resident of the state of Maryland.  At the time of filing this Complaint, Defendant is a resident of the State of New Jersey.  At no time relevant to this complaint was Plaintiff a resident of the State of New Jersey.

18. The employment actions and decisions described in this Complaint substantially occurred in the District of Columbia.

19. The United States District Court for the District of Columbia has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).  The United States District Court for the District of Columbia has pendant (supplemental) jurisdiction over Plaintiff's D.C. claims pursuant to 28 U.S.C. §1367(a) as the claims are part of the same case and controversy.

20. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.   Plaintiff is a resident of the State of Maryland and Defendant's residence is New Jersey.

## FACTS

21. Plaintiff was hired by Defendant in January 2018 as a "Concierge."

22. At the time, Plaintiff was a young female employee who was trying to build a career in the service industry.

23. Plaintiff was just the type of employee that Planned Companies' manager, Mr. Thompson, preyed upon.

24. At all times relevant to this complaint, Plaintiff was supervised by and reported to Mr. Thompson.

25. Unbeknownst to Plaintiff at the time of her employment, Mr. Thompson had a long history of sexually harassing female concierges, security guards and janitors at Planned Companies.

26. Plaintiff learned, whether from Mr. Thompson's own description of his sexual activity or from colleagues and witnesses at Planned Companies, that Mr. Thompson routinely offered female employees raises and promotions in exchange for sex.

27. Mr. Thompson told Plaintiff that a female employee who had asked him for a raise pleasured him orally.

28. Mr. Thompson had induced other female employees to provide him sexual favors in the hopes of a raise.

29. These female employees often were living paycheck to paycheck on near minimum wage hourly rates.

30. Mr. Thompson sent sexually explicit photographs to other female employees and repeatedly tried to get female employees to go a specific hookah bar that Mr.

Thompson preferred where, in addition to hookah, Mr. Thompson would attempt to engage in sexual activity with the employee.

31. Mr. Thompson used his position to engage in amateur photography.

32. Mr. Thompson's photographic interests did not lay in buildings, landscapes or the D.C. skyline.

33. Rather, Mr. Thompson's preferred to take the photos of unconsenting female employees in full-body view to satisfy Mr. Thompson's sick personal electronic gallery of female employees' bodies.

34. Mr. Thompson required female employees to pose for (unbeknownst to them) his own perverted "upskirt" photography.

35. Under the guise of a "uniform check," Mr. Thompson required female employees to stand, full body length, while Mr. Thompson took their picture on his personal cell-phone on a bi-weekly basis.

36. This was the environment Plaintiff entered when she began working for Planned Companies in January, 2018.

37. Like the other female employees, Mr. Thompson required Plaintiff to pose for his personal photographs under the guise of Planned Companies' policy beginning in early 2018.

38. This continued for approximately 8 months.

39. Plaintiff felt violated, disgusted, humiliated, abused and sick as a result of Mr. Thompson's perverted photography sessions.

40. Unfortunately for Plaintiff and Plaintiff's female colleagues, this was just the tip of the sexual harassment iceberg.

41. Between January and February 2018, Mr. Thompson would stalk Plaintiff at her work location until 3am. Mr. Thompson pressured Plaintiff to enter his car and have him take her home. Frightened, Plaintiff refused.

42. Soon, Mr. Thompson began trying to pressure Plaintiff for sex.

43. Mr. Thompson told Plaintiff that other female employees had given him sexual favors.

44. By telling Plaintiff about other female hourly employees that had given him sexual favors and earned raises, Mr. Thompson tried to influence, induce and/or pressure Plaintiff to give him sexual favors in exchange for a raise and/or promotion.

45. Plaintiff denied Mr. Thompson's sick invitation.

46. In an effort to take his harassment of Plaintiff to the next level, Mr. Thompson told her on multiple occasions that he had a large penis.

47. Mr. Thompson told Plaintiff about his sexual activity and prowess.

48. Plaintiff did not invite nor did she consent to these conversations.

49. Mr. Thompson told Plaintiff that female employees and/or other sexual partners had become "obsessed" with him after they "fu**" him.

50. Again, Mr. Thompson was attempting to use these stories and his position as Plaintiff's manager to induce her to give Mr. Thompson sexual favors.

51. Mr. Thompson then sent Plaintiff photographs of Mr. Thompson engaged in sexual behavior.

52. In or around May 2018, Mr. Thompson told Plaintiff that he had sex with an Eritrean girl. (Plaintiff's National Origin is Eritrean).

53. Mr. Thompson told Plaintiff that it was the "best sex of his life" and described the various sexual positions he engaged in.

54. Plaintiff did not invite nor did she consent to these conversations.

55. Again, Mr. Thompson attempted to induce Plaintiff to engage in sexual activity and Plaintiff rejected Mr. Thompson.

56. Mr. Thompson asked Plaintiff to come on a date with him in Crystal City, Virginia and Plaintiff refused.

57. In late October and/or early November, 2018 Plaintiff feared for her health, safety and future employment with Planned Companies as Plaintiff had repeatedly denied Mr. Thompson's advances and refused to participate in quid-pro-sexual harassment.

58. Plaintiff contacted Defendant's Human Resources manager, Jamie Santana.

59. This contact constituted protected activity under Title VII and the DCHRA.

60. By the time that Plaintiff had contacted Defendant's Human Resources department, Defendant had already received multiple previous complaints of sexual harassment concerning Mr. Thompson.

61. Plaintiff learned the hard way that Defendant's Human Resources department did not care or bother to stop Mr. Thompson's sexual harassment of its hourly female workforce.

62. Santana is friends with Mr. Thompson.

63. Upon receiving Plaintiff's complaint, Santana told Mr. Thompson that Plaintiff had filed a complaint against him.

64. As relentless as Mr. Thompson was in his sexual harassment of female Planned Company service workers, Mr. Thompson was equally tenacious in his desire to retaliate against those who complained about his behavior.

65. First, Mr. Thomspon cut Plaintiff's hours preventing her from earning a living wage.

66. Next, Mr. Thompson outright removed Plaintiff from the Planned Companies' schedule for a period of several weeks.

67. Removal of Plaintiff from the schedule constituted an adverse employment action.

68. During this time, Plaintiff was not earning any money and was effectively terminated from employment.

69. In November 2018, when Plaintiff had requested sick leave, Plaintiff was suspended by Mr. Thompson, without pay.

70. Plaintiff's suspension constituted an adverse employment action.

71. Plaintiff feared for her safety, her well-being, her ability to earn a living wage, her freedom from harassment and retaliation to such an extent that Plaintiff had no other choice but to resign her position.

72. Plaintiff was constructively discharged (terminated) from employment in or around November 2018.

73. Plaintiff's constructive discharge constituted an adverse employment action.

74. Defendant knew or should have known of Mr. Thompson's sexual harassment and quid-pro-quo harassment.

75. Defendant failed to implement prompt and appropriate corrective action.

76. Defendant's actions were willful and malicious.

77. Defendant acted negligently.

78. Defendant failed to exercise reasonable care.

79. Plaintiff has administratively exhausted all claims in this suit.

80. Plaintiff filed a charge with the D.C. Office of Human Rights on January 11, 2019.

81. Plaintiff's charge was cross-filed with the EEOC.

82. The statute of limitations on Plaintiff's claims has been tolled during the pendency of Plaintiff's claims with the D.C. Office of Human Rights and the EEOC.

**COUNT I – DISPARATE TREATMENT GENDER DISCRIMINATION IN VIOLATION OF the D.C. HUMAN RIGHTS ACT ("DCHRA") D.C. Code § 2-1401.01 *et seq.***

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. Plaintiff is female.

85. Plaintiff is a member of a protected class

86. At all times relevant to this complaint, Complainant has maintained satisfactory job performance;

87. Plaintiff suffered multiple adverse employment actions.

88. Defendant took adverse employment actions against Plaintiff because of Plaintiff's gender.

89. Defendant was motivated by Plaintiff's gender in taking the aforementioned adverse employment actions

90. The aforementioned adverse employment actions give rise to an inference of discrimination.

91. Defendant took the aforementioned adverse actions because of Plaintiff's sex.

92. Defendant violated the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

93. As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

94. As a proximate result of Defendant's actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits, compensatory damages for pain and suffering and punitive damages.

95. Defendant violated the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

96. Defendant paid Plaintiff less than similarly situated male colleagues.

97. Defendant paid similarly situated male concierges with less experience than Plaintiff and other female staff between $2.00 and $8.00 more than Plaintiff and female concierge staff.

**COUNT II –GENDER DISCRIMINATION/SEXUAL HARASSMENT (SEXUALLY HOSTILE WORK ENVIRONMENT) IN VIOLATION OF the DCHRA, D.C. Code § 2-1401.01 *et seq.***

98. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

99. Plaintiff was subjected to sex discrimination by virtue of a hostile work environment.

100. The hostile work environment was severe and/or pervasive.

101. Plaintiff perceived the work environment as being hostile and/or abusive. The sexual harassment was unwelcome.

102. The work environment was because of Plaintiff's sex. The work environment was severe enough to affect the terms and conditions of Plaintiff's employment.

103. Defendant is responsible for the hostility of the work environment.

104. As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

105. Defendant was motivated by Plaintiff's gender in creating the hostile work environment.

106. Defendant violated the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

**COUNT III – RETALIATION IN VIOLATION OF
the DCHRA, D.C. Code § 2-1401.01 *et seq.***

107. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108. Plaintiff engaged in protected activity.

109. Plaintiff engaged in opposition under Title VII and the DCHRA.

110. Plaintiff had a good faith belief that she was opposing activity prohibited by Title VII and the DCHRA.

111. Plaintiff had a reasonable belief that she was opposing activity prohibited by Title VII and the DCHRA.

112. Defendant and Defendant's agents were aware of Plaintiff's protected opposition and participation activity prior to taking adverse actions against Plaintiff.

113. Plaintiff has suffered adverse actions.

114. There is a causal connection between Plaintiff's protected activity and the adverse actions Plaintiff has suffered.

115. Defendant retaliated against Plaintiff because of and/or motivated by Plaintiff's protected activity.

116. As a proximate result of Defendant's retaliation, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

117. As a proximate result of Defendant's retaliation, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

118. Defendant violated the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

### COUNT IV – RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF the DCHRA  Code § 2-1401.01 *et seq.*

119. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

120. Plaintiff engaged in protected activity under Title VII and the DCHRA.

121. Plaintiff engaged in protected participation activity under Title VII and the DCHRA.

122. Plaintiff engaged in protected opposition activity under Title VII and the DCHRA.

123. Plaintiff had a good faith belief that she was opposing activity prohibited by Title VII and the DCHRA.

124. Plaintiff had a reasonable belief that she was opposing activity prohibited by Title VII and the DCHRA.

125. The Defendant was aware of Plaintiff's protected activity at the time the Defendant took the aforementioned adverse actions against Plaintiff.

126. There is a causal connection between Plaintiff's protected activity and the adverse actions taken against Plaintiff.

127. Defendant took the aforementioned adverse actions against Plaintiff because of and/or motivated by Plaintiff's protected activity.

128. Plaintiff was subjected to retaliation by virtue of a hostile work environment.

129. The hostile work environment was unwelcome and severe and/or pervasive

152. Plaintiff perceived the work environment as being hostile and/or abusive.

153. The work environment was because of Plaintiff's protected activity.

154. Defendant is responsible for the hostility of the work environment.

155 As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

130. As a proximate result of Defendant's retaliation, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

**COUNT V –GENDER DISCRIMINATION/SEXUAL HARASSMENT (QUID PRO QUO HARASSMENT) in VIOLATION OF the DCHRA, D.C. Code § 2-1401.01 *et seq.***

131. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

132. Plaintiff was subjected to sex discrimination by virtue of a quid-pro-quo hostile work environment.

133. Plaintiff suffered adverse actions because of Plaintiff's refusal to submit to her supervisor's sexual demands.

134. Plaintiff perceived the work environment as being hostile and/or abusive. The quid pro quo sexual harassment was unwelcome.

135. The work environment was because of Plaintiff's sex. The quid pro quo work environment was severe enough to affect the terms and conditions of Plaintiff's employment.

136. Defendant took adverse actions against Plaintiff because of and/or motivated by Plaintiff's refusal to submit to her supervisor's sexual demands.

162. The hostile work environment was severe and/or pervasive.

163. A tangible employment action resulted from Plaintiff's refusal to submit to her supervisor's sexual demands.

164. The work environment was because of Plaintiff's sex.

165. Defendant is responsible for the hostility of the work environment.

166. As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

167. Defendant was motivated by Plaintiff's gender in creating the hostile work environment.

168. Defendant violated the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

### COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

169. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

170. Defendant engaged in extreme and outrageous conduct.

171. Defendant, intentionally and/or recklessly, caused Plaintiff severe emotional distress.

172. Defendant's conduct was so outrageous in character and so extreme in degree so as to go beyond all possible bounds of decency.

173. Defendant's conduct was atrocious and utterly intolerable in a civilized society.

174. As a proximate result of Defendant's actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits, compensatory damages for pain and suffering and punitive damages.

175. Defendant's actions were willful and malicious.

### COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

176. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

177. Defendant had an employer/employee relationship with Plaintiff.

178. Defendant undertook an obligation with respect to Plaintiff.

179. Defendant's employer obligation to Defendant necessarily implicates Plaintiff's emotional well-being.

180. There was a likely risk that Defendant's negligence would cause serious emotional distress to the plaintiff.

181. Defendant's negligent actions or omissions in breach of that obligation have caused Plaintiff serious emotional distress.

182. Plaintiff was in the zone of physical danger.

183. The physical danger was created by Defendant's negligence.

184. Plaintiff feared for her safety.

185. Plaintiff suffered serious and verifiable emotional distress.

186. As a proximate result of Defendant's actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits, compensatory damages for pain and suffering and punitive damages.

187. Defendant's actions were willful and malicious.

## PRAYER FOR RELIEF

188. Plaintiff demands all appropriate relief to which Plaintiff is entitled on each count, including: injunctive relief, equitable relief, damages in excess of $75,000 consisting of backwages, front-wages, compensatory damages, punitive damages, pre and post-judgment interests, attorney's fees, costs and nominal damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

***Daniel E. Kenney, Esq.***
Daniel E. Kenney, Esq.
Bar No. MD 0025
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com



***Morris E. Fischer /s/***
Bar No. 490369
Law Office of Morris Fischer, LLC
1400 Spring Street, Suite 350
Silver Spring, MD 20910
301-328-7631 Phone
morris@mfischerlaw.com

Attorneys for Plaintiff